444 P.2d 737

**The STATE of Arizona, Appellee,**

v.

**Matthew LOVE, Appellant.**

**No. 1 CA–CR 151.**

Court of Appeals of Arizona.

Sept. 3, 1968.

Gary K. Nelson, Atty. Gen., Darrell F. Smith, Former Atty. Gen., by Carl Waag, Asst. Atty. Gen., for appellee.

James H. Garcia, Phoenix, for appellant.

CAMERON, Chief Judge.

This is an appeal from a verdict and judgment of guilt to the crimes of burglary, first degree (§§ 13–301 and 13–302 A.R.S.) and grand theft (§§ 13–661 and 13–663 A.R.S.). Defendant was sentenced to a term of not less than four nor more than five years as to each charge, the sentences to run concurrently.

We are called upon to determine:

1. Whether the evidence sustains the verdicts and the refusal of the court to grant defendant's motion for directed verdicts.

2. Whether the remarks of the prosecuting attorney during argument to the jury were so prejudicial as to deny the defendant a fair trial.

The facts viewed in a light most favorable to sustaining the verdicts and judgments, State v. Womack, 6 Ariz.App. 267, 431 P.2d 908 (1967), show that shortly after 5:00 a. m. on 4 February 1966 a Phoenix

Police Officer, Officer Scelso, received a call in response to a burglary alarm sounded at the "Wig World", 906 East Camelback, Phoenix, Arizona. The officer arrived at the building within seconds and discovered a wig on the ground in front of the building, a broken display window, and in the immediate area to the rear of the building approximately 32 wigs piled on the ground.

Another law enforcement officer, Detective White, arrived at the "Wig World" shortly after 5:00 a. m. and just as he pulled up to the front of the building he observed a car pulling out of 10th Street onto Camelback proceeding west. The officer followed the car, since in his estimation, he "felt it didn't belong, didn't fit in with the situation at that time in the morning". The officer stopped the car which was driven by the defendant, Matthew Love, but he let it go on. After receiving a radio call, which confirmed that a burglary had been committed at the "Wig World", Officer White stopped Love again. Officer Scelso then arrived, arrested Love, and took him back to the scene.

The evidence further showed that the owner of the shop had spray painted several of the styrofoam models, on which the wigs were displayed, with a gold spray paint.

### DOES THE EVIDENCE JUSTIFY THE VERDICT?

The defendant first contends that the evidence adduced at the trial does not sustain verdicts of guilty to the crimes of first degree burglary and grand theft or support the trial court in denying defendant's motion for directed verdicts.

 More specifically, the defendant contends that the evidence connecting the defendant with the crimes was insufficient. Where there is "substantial evidence" to support the verdict an appellate court will not set aside the verdict, and there occurs reversible error only where there is a complete absence of probative facts to support the conclusion. State v. Mahan, 92 Ariz. 271, 272, 376 P.2d 132 (1962). We find the following testimony of Officer Scelso such competent evidence to support the conclusion found:

"Q How did you examine him (the defendant)?

"A I examined his hands and his clothing.

"Q Did you notice anything on his hands?

"A Yes, sir, I did.

"Q What did you notice?

"A A golden substance, little flakes of gold colored substance.

 * * * * * *

"Q Did you ever compare by your own eyesight, Officer Scelso, the color or flakes or substance as you described it that you observed on Mr. Love's palm or hand with color or substance on the styrofoam heads located at point 3?

 * * * * * *

"A Yes, sir, I did make it.

 * * * * * *

"Q And, how did they appear to your eye, the two substances, the one on the hand and the ones, substance that you found on his hands and the substance found at Point 3 on the styrofoam heads?

"A To me they appeared similar.

"Q When you say, 'similar', you are referring to the color?

"A Yes, sir.

 * * * * * *

"Q Did you ever examine any other part or portion of Mr. Love's person on that morning?

"A Yes, I did.

"Q What else did you examine?

"A I examined his clothing, mainly a sports jacket which he was wearing at the time.

 * * * * * *

"Q What did you observe, if you observed anything, on his coat on that morning, Officer Scelso?

. "A I observed several strands, long strands of hair on the front side of his sports coat."

The Officer went on to testify that the hair found on the defendant's jacket was found on the front portion and on the sleeves. He further stated that the hair consisted of several long strands of different colors. Defendant's hair was short and black.

■ Defendant did not take the stand and testify in his own behalf. Although the stated testimony consisted of only three witnesses, a policeman for the City of Phoenix, a detective for the City of Phoenix, and the owner of the store, we feel that viewing the testimony as a whole it is ample from which the jury could find the defendant guilty. State v. Bearden, 99 Ariz. 1, 405 P.2d 885 (1965), State v. Norgard, 6 Ariz.App. 36, 429 P.2d 670 (1967).

## ALLEGED PREJUDICIAL REMARKS OF THE PROSECUTOR

■ The defendant next claims that the County Attorney, in his closing-rebuttal argument, committed prejudicial error. The attorney for the defendant in his remarks to the jury stated:

"Now, he took this man's clothes away, his jacket. He says there were some strands of hair that resembled, that were similar, mind you, to strands of hair that he saw on some of these wigs, and he took some of those strands of hair.

"But, ladies and gentlemen of the jury, we have to be fair. They have all the facilities, all the facilities of expert witnesses. He said, 'I sent this stuff over to the laboratory,' but there is not one expert witness, and these witnesses are paid by the Police Department for that purpose, men that can testify, that will say, 'Yes, this hair here belongs, is the same texture, the same kind of hair that is on this wig.'"

The County Attorney in his closing remarks in response to this stated:

"Why should we spend thousands of dollars and examine thirty-nine cuts of hair and then haul in the thirty-nine wigs and conduct an examination on those thirty-nine wigs, then give them back to the Hoyles?

"MR. GARCIA: Just a minute. That is improper argument. I am going to object to it. I want the record to show that.

"THE COURT: The record may show, but it will be overruled. Proceed."

We find no error. The prosecutor's remarks were clearly invited by the defense counsel's argument. State v. Gortarez, 98 Ariz. 160, 402 P.2d 992 (1965).

Judgment affirmed.

DONOFRIO and STEVENS, JJ., concur.